W. A. BECHTEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96286.   Promulgated October 9, 1940.

*Robert L. Bridges, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

928

930

OPINION.

Van Fossan: The first issue presents the question whether or not 80 percent or more of the petitioner's gross income for the fiscal year ending June 30, 1935, was derived from royalties, dividends, interest, annuities, or gains from the sale of stocks or securities, the petitioner not being a regular dealer therein, and thus brought it within the definition of a personal holding company contained in section 351 of the Revenue Act of 1934.[1] It is stipulated that more than 50 percent in value of its outstanding stock was owned by not more than five individuals.

As will appear later in the opinion, the specific item which determines the qualifying percentage is the transaction with the Standard Oil Co. of California, covered by its contract with the petitioner and the Kaiser Co. dated August 25, 1934. The completion of that contract resulted in the payment of $133,622.16 to the petitioner for the work described therein.

The petitioner secured a subcontractor (Nevada corporation) to perform the work and paid it $123,532.60. It also paid $11,500 to the Kaiser Co. for the assignment of the company's interest in the contract. In its income tax return for the taxable year the petitioner included in its gross income the amount received from the oil company and claims that it rightfully belongs there, since it was derived from the operation of its business.

The petitioner insists that it is essentially an operating company engaged in construction work. We think that the record supports its contention. In its income tax return, it stated its business to be "construction contractors." Its return showed profits or losses from three "joint ventures" in construction enterprises, the net income or

---

[1] SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES.

(a) Imposition of Tax.—There shall be levied, collected, and paid, for each taxable year, upon the undistributed adjusted net income .of every personal holding company a surtax equal to the * * *

    *        *        *        *        *        *        *

(b) Definitions.—As used in this title—

(1) The term "personal holding company" means any corporation (other than a corporation exempt from taxation under section 101, and other than a bank or trust company incorporated under the laws of the United States or of any State or Territory, a substantial part of whose business is the receipt of deposits and other than a life-insurance company or surety company) if—(A) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and (except in the case of regular dealers in stock or securities) gains from the sale of stock or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals. * * *

loss from which was reported on partnership returns. The petitioner received "fees from other companies" and made substantial sales of salvage materials. Its schedules showed large sums representing construction and warehouse equipment, lands and buildings, track, etc. Its listed expenditures included the cost of estimating and bidding, traveling charges, and equipment maintenance, etc. From these facts and figures, garnered from the petitioner's return, we have no reason to doubt that it was actively engaged in the business of construction contracting.

The respondent asserts that the petitioner's gross income consists of the following items:

| | |
|---|---:|
| Interest | $859. 45 |
| Rental | 7, 788. 59 |
| Capital gain | 8, 717. 14 |
| Dividends | 391, 169. 00 |
| Other income | 32, 415. 33 |
| "Gross Income" | 440, 949. 51 |

He excludes the controversial item of $133,622.16 because, as he says, the transaction resulted in a loss of $1,410.44. He argues that gross income may be derived from two sources, services and capital, and that the amount received from the oil company was from neither.

The petitioner contends that the contract with the oil company was entered into in the usual course of its normal business, that the entire amount received therefrom was properly included in its gross income, and that the cost of performing the contract was duly and properly deducted.

As we view the record, the question is a comparatively simple one. The petitioner and the Kaiser Co. agreed with the oil company to remove and haul away about 110 miles of 12-inch pipe. The petitioner later bought out the Kaiser Co.'s interest in the contract. It then subcontracted the work to the Nevada corporation, by which it was completed. The entire transaction resulted in a small loss, due, doubtless to the fact that the pipe mileage was reduced from 110 miles to less than 96 miles. It is immaterial whether the contract produced a loss or a gain. Obviously, it was entered into for profit.

The Nevada corporation, as a subcontractor (and so designated in the contract of October 4, 1934), was the agent of the petitioner to perform a special and designated task. The petitioner received from the oil company the contract price for producing the work specified in the agreement of August 25, 1934. Pursuant to the contract of October 4, 1934, the petitioner paid to the Nevada corporation the agreed price for accomplishing the purpose of the former contract. There was no assignment to the Nevada corporation of the petitioner's rights under its contract with the oil company, whose assent to any assignment

was required and was, in fact, secured when the petitioner purchased the Kaiser Co.'s interest. On the contrary, the oil company continued to look to the petitioner to render the specified services and the petitioner, in turn, held the Nevada corporation responsible for completing the actual work. In its dealings with the petitioner, the oil company in no way recognized the Nevada corporation as having any interest or rights in the contract between the petitioner and the oil company.

It would scarcely be contended that, if the petitioner had contracted with different persons to execute various parts of the contract, e. g., with one, to remove the pipe, with another to clean it, and with a third, to haul it away, and had employed an expert to supervise the entire project, the amounts paid under the prime contract would not be included in the petitioner's gross income and the amounts paid to subcontractors and employees would not be listed in the petitioner's deductions.

The respondent, on brief, also charges that the transaction was "designed and calculated as a device by means of which the petitioner sought to escape its just burden of taxation." We find in the record no suggestion of such a motive. As we have said heretofore, the subject matter of the contract was completely in accord with the petitioner's business. The total amounts paid by the oil company, therefore, were properly included in the petitioner's gross income derived from that business. It follows that the petitioner is not subject to the statutory penalty imposed by the respondent for failure to file a return on Form 1120H as prescribed by article 351-8 of Regulations 86.

In view of our holding on the above issue, it becomes unnecessary to discuss the second, or alternative, issue.

*Decision will be entered under Rule 50.*